## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARTLEY MICHAEL MULLEN, JR., individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ADVANCE STORES COMPANY INC. d/b/a ADVANCE AUTO PARTS, <br><br> Defendant. | Case No. <br><br><br> **FILED ELECTRONICALLY** |

## NATIONWIDE CLASS ACTION COMPLAINT

COMES NOW, Bartley Michael Mullen, Jr., ("Plaintiff"), on behalf of himself and all others similarly situated and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this civil rights class action on behalf of himself and all others similarly situated against Advance Stores Company Inc. d/b/a Advance Auto Parts ("Defendant") for violations of Title III of the ADA and its implementing regulations in connection with Defendant's failure to provide and ensure equal access for individuals with mobility disabilities who patronize Defendant's stores.

2. Despite passage of the ADA more than twenty-five years ago, to this date, Defendant's properties are not fully accessible to persons with mobility disabilities. Defendant has discriminated, and continues to discriminate, against Plaintiff, and all others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations at Defendant's stores by failing to provide

accessible parking lots and paths of travel and failing to remove architectural barriers, where such removal is readily achievable.

3.      Defendant has also failed to make reasonable modifications to its policies, practices, and procedures that are necessary to provide its goods, services, facilities, and accommodations to individuals with mobility disabilities. By failing to undertake efforts to ensure that no individual with a disability is excluded, denied services, or otherwise treated differently than other individuals, Defendant subjects Plaintiff and those similarly situated to discrimination, exclusion, and unequal treatment in violation of the ADA.

4.      Plaintiff has visited Defendant's facilities and was denied full and equal access as a result of Defendant's inaccessible parking lots and paths of travel.

5.      Plaintiff's experience is not isolated—Defendant has systematically discriminated against individuals with mobility disabilities by implementing policies and practices that consistently violate the ADA's accessibility guidelines and routinely result in access barriers at Defendant's facilities.

6.      In fact, numerous facilities owned, controlled and/or operated by Defendant have parking lots and paths of travel that are inaccessible to individuals who rely on wheelchairs for mobility, demonstrating that the centralized decision making Defendant employs with regard to the design, construction, alteration, maintenance and operation of its facilities causes access barriers, and/or allows them to develop and persist at Defendant's facilities.

7.      Defendant will continue discriminating unabated unless and until enjoined as Plaintiff requests. Accordingly, Plaintiff seeks declaratory and injunctive relief pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), enjoining Defendant from continuing its discriminatory conduct, including an order directing Defendant to make readily achievable

...

alterations to its facilities to remove physical barriers to access and make its facilities fully accessible to and independently usable by people with disabilities to the extent required by the ADA; an order requiring Defendant to make all reasonable modifications in policies, practices, or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis; a declaration determining that Defendant's policies and practices of discrimination result in a violation of Title III of the ADA and its implementing regulations; an award of attorneys' fees, expenses, and costs associated with pursuit of this litigation; and any other such relief that this Court deems just and proper.

## THE PURPOSE OF THE ADA

8. Congress passed the ADA, in part, because it found that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities". 42 U.S.C. § 12101(a)(5)

9. When the ADA was signed into law by President George H.W. Bush, he declared: "Together, we must remove the physical barriers we have created and the social barriers that we have accepted. For ours will never be a truly prosperous nation until all within it prosper."[1]

10. For more than twenty-five years, the ADA has been the central civil rights law protecting people with disabilities, a group of Americans who are too often overlooked and undervalued. Like other civil rights laws, the purpose of the ADA is clear: the eradication of discrimination. As one legal scholar explained: "A single step in front of a store may not

---

[1] EEOC.gov, Remarks of President George Bush at the Signing of the Americans with Disabilities Act, available at: https://www.eeoc.gov/eeoc/history/35th/videos/ada_signing_text.html

immediately call to mind images of Lester Maddox standing in the door of his restaurant to keep blacks out. But in a crucial respect they are the same, for a step can exclude a person who uses a wheelchair just as surely as a no-blacks-allowed rule can exclude a class of people." Samuel Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 23 (2006).

11. Title III of the ADA and its implementing regulations broadly protects the rights of individuals with disabilities to independently and equally access places of public accommodation.

12. The Supplementary Information to 28 C.F.R. § 36 explains, among other things: "Some of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use non-accessible facility] all negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities."

## JURISDICTION AND VENUE

13. The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

14. Personal jurisdiction exists for Defendant because it owns, operates, leases and/or controls multiple stores located in Pennsylvania.

15. Venue in the Western District of Pennsylvania is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred.

## PARTIES

16.     Plaintiff Bartley Michael Mullen, Jr., resides in Beaver County, Pennsylvania. Plaintiff is a double amputee and, as a result, uses a wheelchair for mobility. Plaintiff is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

17.     Plaintiff is a tester in this litigation and a consumer who wishes to access Defendant's goods and services. *See, e.g., Heinzl v. Cracker Barrel Old Country Stores, Inc.*, No. CV 14-1455, 2016 WL 2347367, at *21 (W.D. Pa. Jan. 27, 2016), *report and recommendation adopted as modified sub nom. Heinzl v. Cracker Barrel Old Country Store, Inc.*, No. 2:14-CV-1455, 2016 WL 1761963 (W.D. Pa. Apr. 29, 2016) ("the weight of authority is to permit standing to a plaintiff who acts as a tester").[2]

18.     Defendant Advance Stores Company, Inc., d/b/a Advance Auto Parts, is a Virginia corporation with its principal place of business in 5008 Airport Road, Roanoke, VA 24012.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

19.     The ADA was enacted over a quarter century ago and is intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

---

[2]     *See also Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 457 (4th Cir. 2017); *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.,* 867 F.3d 1093, 1102 (9th Cir. 2017); *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211-12 (10th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372-74 (1982); *Evers v. Dwyer*, 358 US 202, 204 (1958); *Pierson v. Ray*, 386 US 547, 558 (1967).

20. The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

21. Title III of the ADA generally prohibits discrimination against individuals with disabilities in the full and equal enjoyment of public accommodations, 42 U.S.C. § 12182(a), and prohibits places of public accommodation, either directly, or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

22. Title III further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of a disability. 42 U.S.C. § 12182(b)(1)(D).

23. Title III and its implementing regulations define discrimination to include the following:

   a) Failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 CFR § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv);

   b) Failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1);

   c) For alterations to public accommodations made after January 26, 1992, failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2); and

   d) Failure to maintain those features of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211.

24. The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183.  42 U.S.C. 12188(a)(1).

25. The ADA also provides for specific injunctive relief, which includes the following:

> In the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter.  Where appropriate, injunctive relief shall also include…modification of a policy…to the extent required by this subchapter.

42 U.S.C. § 12188(a)(2); 28 C.F.R. § 36.501(b).

## FACTUAL ALLEGATIONS

**I.  Plaintiff Has Been Denied Full and Equal Access to Defendant's Facilities.**

26. Plaintiff has visited Defendant's property located at 2580 Darlington Road, Beaver, Pennsylvania, including within the past year, where he experienced unnecessary difficulty and risk due to excessive slopes in Defendant's purportedly accessible parking facility.

27. As a result of Defendant's non-compliance with the ADA, Plaintiff's ability to access and safely use Defendant's facilities has been significantly impeded.

28. Plaintiff intends to return to Defendant's facilities, including to ascertain whether those facilities remain in violation of the ADA.

29. Plaintiff is and will be deterred from returning to and fully and safely accessing Defendant's facilities, however, so long as Defendant's facilities remain non-compliant, and so long as Defendant continues to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at its facilities.

30. Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendant's facilities in violation of their rights under the ADA.

31. As an individual with mobility disabilities who uses a wheelchair, Plaintiff is directly interested in whether public accommodations, like Defendant, have architectural barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

## II. Defendant Repeatedly Denies Individuals With Disabilities Full and Equal Access to its Facilities.

32. Defendant, as the owner, controller and/or operator of its facilities, employs centralized decision making processes with regard to the design, construction, alteration, maintenance and operation of its facilities.

33. To date, Defendant's centralized design, construction, alteration, maintenance and operational policies and practices have systematically and routinely violated the ADA by designing, constructing and altering facilities so that they are not readily accessible and usable, by failing to remove architectural barriers, and by failing to maintain and operate facilities so that the accessible features of Defendant's facilities are maintained.

34. On Plaintiff's behalf, investigators examined multiple locations owned, controlled, and/or operated by Defendant, and found the following violations, which are illustrative of the fact that Defendant implements policies and practices that routinely result in accessibility violations:

   a) 85 Tarentum Bridge Road, New Kensington, PA

   i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

   ii. The surfaces of one or more access aisles had slopes exceeding 2.1%; and,

   iii. A curb ramp located on the route to the building entrance had a running slope exceeding 8.3%.

b) 2405 Freeport Road, Pittsburgh, PA

   i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

   ii. The surfaces of one or more access aisles had slopes exceeding 2.1%; and,

   iii. A curb ramp located on the route to the building entrance had a running slope exceeding 8.3%.

c) 12955 Frankstown Road, Pittsburgh, PA

   i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

d) 6489 Lincoln Highway E., Jeanette, PA

   i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

   ii. The surfaces of one or more access aisles had slopes exceeding 2.1%; and,

   iii. A curb ramp located on the route to the building entrance had a running slope exceeding 8.3%.

e) 8716 Norwin Avenue, Irwin, PA

   i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and,

   ii. The surfaces of one or more access aisles had slopes exceeding 2.1%.

f) 805 West Marketview Drive, Champaign, IL

   i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

   ii. The surfaces of one or more access aisles had slopes exceeding 2.1%; and,

   iii. A portion of the route to the store entrance had a cross slope exceeding 2.1%.

g) 403 North Mattis Avenue, Champaign, IL

   i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and,

   ii. The surfaces of one or more access aisles had slopes exceeding 2.1%.

h) 924 Carlyle Avenue, Belleville, IL

    i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

i) 525 Lincoln Highway, Fairview Heights, IL

    i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and,

    ii. The surfaces of one or more access aisles had slopes exceeding 2.1%.

j) 5430 Springboro Pike, Dayton, OH

    i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

k) 8107 Springboro Pike, Miamisburg, OH

    i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

    ii. The surfaces of one or more access aisles had slopes exceeding 2.1%; and,

    iii. The landing at the top of the curb ramp had a slope exceeding 2.1%.

l) 815 S Main Street, Englewood, OH

    i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

    ii. The surfaces of one or more access aisles had slopes exceeding 2.1%; and,

    iii. A curb ramp located on the route to the building entrance had a running slope exceeding 8.3%.

m) 1246 Kaufman Avenue, Fairborn, OH

    i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and,

    ii. The surfaces of one or more access aisles had slopes exceeding 2.1%.

n) 434 Woodman Drive, Dayton, OH

    i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

    o)  911 3rd Street South, Nampa, ID

        i.  The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and,

        ii.  The surfaces of one or more access aisles had slopes exceeding 2.1%..

    p)  303 Franklin Road, Meridian, ID

        i.  The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and,

        ii.  The surfaces of one or more access aisles had slopes exceeding 2.1%.

35.  The fact that individuals with mobility-related disabilities are denied full and equal access to numerous of Defendant's facilities, and the fact that each of these facilities deny access by way of inaccessible parking facilities, is evidence that the inaccessibility Plaintiff experienced is not isolated, but rather, caused by Defendant's systemic disregard for the rights of individuals with disabilities.

36.  Defendant's systemic access violations demonstrate that Defendant either employs policies and practices that fail to design, construct and alter its facilities so that they are readily accessible and usable, and/or that Defendant employs maintenance and operational policies and practices that are unable to maintain accessibility.

37.  Accordingly, Plaintiff seek an injunction to remove the barriers currently present at Defendant's facilities and an injunction to modify the policies and practices that have created or allowed, and will create and allow, inaccessibility to affect Defendant's network of facilities.

## CLASS ALLEGATIONS

38.  Plaintiff bring this class action, pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of himself and the following nationwide class:

> All persons with qualified mobility disabilities who, due to Defendant's failure to comply with the ADA's accessible parking and path of travel requirements, have experienced or will experience slope-related injuries that occur within the parking

facilities at all locations within the United States for which Defendant owns and/or controls the parking facilities.

39. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

40. <u>Typicality</u>: Plaintiff' claims are typical of the claims of the members of the class. The claims of the Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

41. <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's facilities and/or services due to Defendant's failure to make their facilities fully accessible and independently usable as above described.

42. <u>Adequacy of Representation</u>: Plaintiff is an adequate representatives of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

43. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

## **SUBSTANTIVE VIOLATION**

44. The allegations contained in the previous paragraphs are incorporated by reference.

45. Defendant's facilities were altered, designed, or constructed, after the effective date of the ADA.

46. Defendant's facilities are required to be altered, designed, and constructed so that they are readily accessible to and usable by individuals who use wheelchairs. 42 U.S.C. § 12183(a).

47. Further, the accessible features of Defendant's facilities, which include the parking lots and paths of travel, are required to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities. 28 U.S.C. § 36.211.

48. The architectural barriers described above demonstrate that Defendant's facilities were not altered, designed, or constructed in a manner that causes them to be readily accessible to and usable by individuals who use wheelchairs, and/or that Defendant's facilities were not maintained so as to ensure that they remained accessible to and usably by individuals who use wheelchairs.

49. Furthermore, the architectural barriers described above demonstrate that Defendant has failed to remove barriers, as required by 42 U.S.C. Section 12182(b)(2)(A)(iv).

50. Defendant's repeated and systemic failures to design, construct and alter facilities so that they are readily accessible and usable, to remove architectural barriers, and to maintain the accessible features of their facilities constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

51. Defendant's facilities are required to comply with the Department of Justice's 2010 Standards for Accessible Design, or in some cases the 1991 Standards 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406; 28 C.F.R., pt. 36, app. A.

52. Defendant is required to provide individuals who use wheelchairs full and equal enjoyment of its facilities.  42 U.S.C. § 12182(a).

53. Defendant has failed, and continues to fail, to provide individuals who use wheelchairs with full and equal enjoyment of its facilities.

54. Defendant has discriminated against Plaintiff and the Class in that it has failed to make its facilities fully accessible to, and independently usable by, individuals who use wheelchairs in violation of 42 U.S.C. § 12182(a) as described above.

55. Defendant's conduct is ongoing and continuous, and Plaintiff have been harmed by Defendant's conduct.

56. Unless Defendant is restrained from continuing its ongoing and continuous course of conduct, Defendant will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the Class.

57. Given that Defendant has not complied with the ADA's requirements to make its facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes his statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the members of the class, prays for:

a. A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant's facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

    b.    A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.501(b) which directs: (i) Defendant to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) Defendant to change its corporate policies and practices to prevent the reoccurrence of access barriers post-remediation; and, (iii) Plaintiff to monitor Defendant's facilities to ensure that the injunctive relief ordered above remains in place.

    c.    An Order certifying the class proposed by Plaintiff, and naming Plaintiff as class representative and appointing his counsel as class counsel;

    d.    Payment of costs of suit;

    e.    Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

    f.    The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: February 25, 2019

Respectfully Submitted,

By: */s/ R. Bruce Carlson*
R. Bruce Carlson (PA 56657)
Gary F. Lynch (PA 56887)
Kelly K. Iverson (PA 307175)
**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(p) 412.322.9243
(f) 412.231.0246